UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON J. MARTIS,

        Plaintiff/Counterclaim Defendant,

                                       File No.  1:13-CV-1106

v.

                                       HON. ROBERT HOLMES BELL

DISH NETWORK,

        Defendant/Counterclaim Plaintiff.

_____/

**O P I N I O N**

      This action to set aside an arbitrator's award is before the Court on cross-motions to vacate or affirm an arbitration award (ECF Nos. 11, 18), Plaintiff's cross-motion to vacate the arbitration award (ECF No. 18), and on a motion for sanctions (ECF No. 19).  For the reasons that follow, the arbitration award will be confirmed and the motion for sanctions will be denied.

**I.**

      Plaintiff Shannon J. Martis was employed by Defendant DISH Network ("DISH") on December 4, 2006, as a Quality Assurance Specialist ("QAS").[1]  As a condition of his employment, Martis entered into a written agreement to arbitrate any claim, controversy

_____

[1]Martis does not challenge any of the Arbitrator's factual findings.  (Pl.'s Resp. 5, ECF No. 13.)  Accordingly, this summary of the background facts is drawn from the facts contained in the Arbitrator's August 26, 2013, Opinion and Award.  (Arb. Op., Def. Mot for Summ. J., Ex. F, ECF No. 12.)

and/or dispute arising out of or relating to his employment and/or termination of employment. Martis was an "at will" employee. In his role as a QAS, Martis drove a truck and inspected and evaluated various job installations. In late 2009, the work van Martis had been driving was replaced with a smaller Chevy Colorado pick-up truck. On March 2, 2010, Martis wrote a recommendation letter on behalf of Robert Knott, an employee of Galaxy 1, an installation subcontractor for DISH.

In early May 2010 Martis began experiencing pain in his right knee, right hip, and lower back as a result of the awkward position he had to assume in driving the Colorado. He expressed concern about his discomfort in an email to Jimmy Turbeville, his supervisor, with copies to Glen Capra and Gary Hull, and requested that he be switched back to the larger Chevy van. On May 4, Hull moved Martis back into a full-size Chevy van. However, the following day, Turbeville directed Martis to continue driving the Colorado and admonished Martis that "any changes in vehicles etc. need to be run by me only first." On receipt of Turbeville's email, Martis emailed HR Representative Merriweather, advising that he did not want to return to driving a vehicle that caused him physical pain, but that he was concerned about not complying with the directive from his direct supervisor. On May 6, Martis advised Turbeville in an email that he would not drive a vehicle that caused him physical pain and could lead to a permanent disability. Martis did drive the Colorado for three days during the following week, but then went to the clinic due to pain in his hip and knee. Martis's medical records reflect that he was diagnosed with degenerative arthritis and synovial

chondromatosis. Martis was treated at the clinic until June 18, at which time he was cleared to return to work.

In early June, Robert Byrd, the CEO of Galaxy 1, complained to DISH Operations Manager Glen Capra that Martis had written a letter of recommendation for a Galaxy 1 employee, that Martis was adversely affecting Galaxy 1's business by giving unfair inspection evaluations to Galaxy 1 employees, and that Martis was steering Galaxy 1 employees to Vision Quest, another DISH subcontractor. Turbeville and Merriweather met with Martis on June 8 to discuss Byrd's complaint. Martis admitted writing the letter of recommendation for the Galaxy I employee, admitted that he ranked Vision Quest first among the subcontractors, and admitted that he told one Galaxy I employee that Vision Quest paid for the equipment of its installers, which Galaxy did not. Martis denied the allegation that he unfairly evaluated jobs by Galaxy 1 employees. At the conclusion of that meeting, Martis was suspended pending further investigation. Merriweather conducted further investigation into Byrd's allegations and found no evidence of bias and no evidence that any Galaxy I employee had moved to Vision Quest after speaking with Martis.

On June 28, 2010, five DISH representatives participated in a telephone conference call and decided to discharge Martis. It was highly unusual to have five individuals involved in a discharge decision. The telephone conference was perfunctory. No reference was made to Martis's worker's compensation claim, to his complaints about driving the Colorado pick-up, or his 6 week treatment by company doctors with regard to the ailments he incurred as

a result of driving the cramped pick-up.  All five participants in the discharge decision agreed that the reason for the discharge was that Martis had violated the company's reference policy and its conflict of interest policy, even though Merriweather had concluded that there was no conflict of interest, and the referenced policy clearly did not apply to Martis.

On June 5, 2012, Martis initiated arbitration proceedings by filing a complaint and demand for arbitration against DISH.  (Def. Mot. for Summ. J., Ex. C.)  Following the close of discovery, DISH moved for summary judgment on all of Martis's claims.  The Arbitrator granted summary judgment in favor of DISH on Counts 1, 2, and 3 of Martis's complaint, which alleged weight discrimination in violation of Michigan's Elliott Larsen Civil Rights Act ("ELCRA"), height discrimination in violation of ELCRA, and discrimination in violation of Michigan's Worker's Disability Compensation Act ("WDCA").  The Arbitrator also granted partial summary judgment in favor of DISH on Martis's retaliation claim in Count V to the extent that it alleged retaliation for exercising rights under the ELCRA and the WDCA.

A four-day evidentiary hearing was held on Martis's two remaining claims, Counts IV and V, alleging disability discrimination under Michigan's Persons with Disabilities Civil Rights Act ("PDCRA") and retaliation for exercising his rights under the PDCRA.  On August 26, 2013, Arbitrator Thomas Barnes issued an arbitration award in favor of DISH and dismissing Martis' remaining claims for disability discrimination and retaliation arising from his prior employment with DISH.  The Arbitrator found that Martis was disabled within the

4

meaning of the Act, that he was qualified to perform the essential functions of the job, that DISH was aware of his disability, and that the reasons given by DISH in support of its decision to terminate Martis's employment were wholly without merit.  (Arb. Op. 11–12.) The Arbitrator further found that Martis engaged in protected activity, that DISH knew of that activity, and that DISH discharged him.  (Arb. Op. 16.)  The Arbitrator nevertheless found insufficient evidence to support a finding that DISH discriminated or retaliated against Martis due to his disability and concluded that the discharge was not illegal.  (*Id.* at 16–17.)

Martis filed this action to vacate the arbitration award in the Ingham County Circuit Court.  (ECF No. 1, Ex. 1, Compl.)  DISH removed the action to this Court on the basis of diversity of citizenship, and filed a counterclaim to confirm the arbitration award. (ECF Nos. 1, 5.)  DISH has filed a motion for summary judgment in its favor dismissing Martis's complaint and confirming the arbitration award.  Martis has filed a cross-motion to vacate the arbitration award.

## II.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the moving party carries its burden of showing there is an absence of evidence to support a

5

claim then the nonmoving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## III.

The cross-motions in this case raise the issue of whether the arbitration award should be vacated or confirmed. As a general rule, a federal court sitting in diversity applies federal procedural rules and the substantive law of the forum state. *Rupert v. Daggett*, 695 F.3d 417, 423 (6th Cir. 2012) (citing *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010)). Martis contends that the Court should the arbitration award should be reviewed under state law. DISH has cited to both federal and state law.

"The FAA creates 'a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684, 693 (6th Cir. 2012) (quoting *Moses H. Cone Hosp. v. Mercury Contstr. Corp.*, 460 U.S. 1, 24 (1983)). "[T]he FAA generally preempts inconsistent state laws and governs all aspects of arbitrations concerning 'transaction[s]

involving commerce.'"  *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 13-2288,  — F.3d —, 2014 WL 1378134, at *5 (6th Cir. Apr. 9, 2014) (quoting *Muskegon Cent. Dispatch 911 v. Tiburon, Inc*., 462 F. App'x 517, 522– 23 (6th Cir. 2012)).  Nevertheless, "parties may agree to abide by state rules of arbitration, and 'enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA.'"  *Id*. (quoting *Muskegon Cent. Dispatch*, 462 F. App'x at 522–23).

In *Savers,* both parties agreed that arbitration would be subject to the laws of the State of Michigan and their treaty neither referred to the FAA nor otherwise suggested that the parties sought to invoke its provisions.  *Id*. at *5.  Under those circumstances, the Sixth Circuit determined that "the parties unambiguously intended to displace the federal standard with Michigan law, and Michigan law governs our review."  *Id*.  Similarly, in *Muskegon Central Dispatch*, the Court applied Michigan law where the arbitration agreement explicitly provided that disputes should be submitted to arbitration in accordance with the provisions of the Michigan Arbitration Act and did not refer to the FAA or otherwise suggest that the parties sought to invoke the FAA in the arbitration agreement.  462 F. App'x 523.

The Arbitration Agreement at issue in this case is not as clear as the agreements at issue in *Savers* and *Muskegon Central Dispatch*.  The DISH arbitration agreement provides: "The Employee agrees that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§  1 et seq., and is fully enforceable."  (Compl. Ex. 2.)  However, it also provides: "The arbitration shall be governed by and construed in accordance with the substantive law

of the State" in which the Employee performs or last performed services for the company.

(*Id.*)  Because the Arbitration Agreement indicates that it is governed by both the Federal

Arbitration Act ("FAA") and by state law, it is ambiguous; it does not explicitly or

unambiguously reflect an intent to displace the federal standard with Michigan law.  Where

there are ambiguities, they are resolved in favor of the federal standard.  *Muskegon Cent.*

*Dispatch*, 462 F. App'x at 523.  Accordingly, the Court will apply the federal standard of

review.[2]

The principal issue in this case, therefore, is whether the award of the arbitrator should

be confirmed pursuant to 9 U.S.C. § 9[3] or vacated on any of the grounds enumerated in 9

U.S.C. § 10(a).  The FAA "expresses a presumption that arbitration awards will be

_____

[2]Because "Michigan's arbitration law is almost identical to the FAA in all relevant
respects," *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 303 (6th Cir. 2008), the decision
to apply federal law is not likely to have any material effect on the disposition of this case.
*See also Savers*, 2014 WL 1378134, at *5 (noting that because 9 U.S.C. § 10(a) and Mich.
Ct. R. 3.602(J)(2) (governing the vacatur of arbitration awards) are "nearly identical," the
choice-of-law determination bears "little impact on our analysis or disposition").


[3]The FAA provides for confirmation of arbitration awards as follows:

> If the parties in their agreement have agreed that a judgment of the court shall
> be entered upon the award made pursuant to the arbitration, and shall specify
> the court, then at any time within one year after the award is made any party
> to the arbitration may apply to the court so specified for an order confirming
> the award, and thereupon the court must grant such an order unless the award
> is vacated, modified, or corrected as prescribed in sections 10 and 11 of this
> title.

9 U.S.C. § 9.  The arbitration agreement in this case provides that "judgment upon the
arbitrator's decision and/or award may be entered in any court of competent jurisdiction."

8

confirmed" *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008) (quoting

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005)  Accordingly,

a court's review of an arbitrator's decision is "very narrow;" it is "one of the narrowest

standards of judicial review in all of American jurisprudence." *Id.*  (quoting *Nationwide*, 429

F.3d at 643.)  A federal court is authorized to vacate an arbitration award in the following

circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either
> of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the
> hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent
> and material to the controversy; or of any other misbehavior by which the
> rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed
> them that a mutual, final, and definite award upon the subject matter submitted
> was not made.

9 U.S.C.  § 10.  The Sixth Circuit has noted that a court "may also vacate an award on

non-statutory grounds if the arbitration panel demonstrates a 'manifest disregard of the law.'"

*Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 n.2 (6th Cir. 2008)

(quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).[4]

---

[4]The Sixth Circuit has indicated that the Supreme Court's opinion in *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 590 (2008), casts some doubt on the continuing vitality this "judicially created" supplement to the enumerated forms of FAA relief.  *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 379-80 (6th Cir. 2008); *Ozormoor v. T-Mobile USA, Inc.*, 459 F. App'x 502, 505 (6th Cir. 2012).  Nevertheless, because neither the Supreme Court nor the Sixth Circuit has expressly rejected the "manifest disregard of the law" theory, this Court will assume that it is still a viable theory.

"Given the strong federal policy in favor of enforcing arbitration agreements, the burden of proving that the arbitrators exceeded their powers is very great." *Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990) (internal citation omitted). "'[M]anifest disregard of the law' means more than a mere error in interpretation or application of the law.'" *Id.* (quoting *Anaconda Co. v. Dist. Lodge No. 27 of the Int'l Assoc. of Machinists and Aerospace Workers*, 693 F.2d 35, 36 (6th Cir.1982)). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (quoting *United Paperworkers Int'l Union v. Misco Inc.*, 484 U.S. 29, 38 (1987)). "As long as the arbitrator's award draws its essence from [an agreement], and is not merely [the arbitrator's] own brand of . . . justice, the award is legitimate." *Barrick Enters., Inc. v. Crescent Petroleum, Inc.*, 496 F. App'x 614, 616 (6th Cir. 2012) (quoting *Misco*, 484 U.S. at 36) (internal quotation and citation omitted); *see also Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995) ("If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed. Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside.").

## IV.

Martis does not argue that the arbitration award was procured by fraud, corruption or misconduct. Instead, he contends that the Arbitrator "made clear errors of law which

10

substantially changed the outcome of the arbitration proceedings prejudicing plaintiff."
(Compl. ¶ 71.) The Court construes this as an argument that the Arbitrator exceed his powers
or that he manifestly disregarded the law.

Specifically, Martis complains that after finding that he had established both his prima
facie case and pretext, the Arbitrator nevertheless found that DISH had not discriminated or
retaliated against him. Martis contends that in light of the Arbitrator's finding that he had
established a prima facie case of discrimination, and in light of his further finding that
DISH's asserted basis for terminating Martis were wholly without merit, his the Arbitrator''s
failure to find unlawful discrimination and retaliation is clear legal error. Martis contends
that the Arbitrator's conclusion that Martis was required to prove more than a prima facie
case and pretext was clearly contrary to controlling legal principals. (Pl. Resp. 5, ECF No.
13.)

Martis's argument lacks merit. First, he improperly conflates the *McDonnell Douglas*
burden-shifting paradigm used at the summary judgment stage with his ultimate burden to
persuade the fact finder that his termination was actually motivated by unlawful
discrimination and/or retaliation. As the Michigan Supreme Court has explained:

> [T]he *McDonnell Douglas* approach merely provides a mechanism for
> assessing motions for summary disposition and directed verdict in cases
> involving circumstantial evidence of discrimination. It is useful only for
> purposes of assisting trial courts in determining whether there is a
> jury-submissible issue on the ultimate fact question of unlawful discrimination.
> The McDonnell Douglas model is *not* relevant to a jury's evaluation of
> evidence at trial.

*Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 523 (Mich. 2001) (emphasis in original).

Second, the Arbitrator did not find pretext.  Pretext is a showing "'either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the] discharge, or (3) that they were insufficient to motivate discharge.'"  *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).   The reasons given for Martis's termination was his violation of the conflict of interest policy and the reference policy.  The Arbitrator found that neither of these reasons had merit because the policies did not apply to Martis's actions.  However, even though he found that the reasons lacked merit, he found no indication that the five DISH representatives who made the termination decision relied on anything but these policies, and he found nothing in their demeanor to suggest that they were not credible.  (Arb. Op. 15.)  In other words, the Arbitrator disagreed with the reason given, but he didn't find that it was not the true reason.

Third, even if the Arbitrator had found pretext, and even assuming that the *McDonnell Douglas* burden-shifting paradigm applied, a prima facie case and pretext do not require a finding of unlawful discrimination.  As the cases Martis has cited reveal, a finding that a plaintiff has established a prima facie case and pretext only creates a permissive inference of discrimination and retaliation.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) **may**, together with the

12

elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will **permit** the trier of fact to infer the ultimate fact of intentional discrimination.") (emphasis added); *Kliner v. Tenn. Valley Auth.*, 128 F.3d 337, 347 (6th Cir. 1997) ("Once a plaintiff establishes its prima facie case, this, along with disbelief of the defendant's proffered reasons for the negative employment action, will **permit** a finding of discrimination by the factfinder.") (emphasis added).  It does not require a finding of discrimination and retaliation.  As the court in *Reeves* explained:

> This is not to say that such a showing by the plaintiff [of pretext] will always be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

*Reeves*, 530 U.S. at 148.

Under the MPWDA Martis bore at all times the ultimate burden of proving by a preponderance of admissible evidence that unlawful discrimination or retaliation animus actually motivated DISH to terminate his employment.  *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 522, n.8 (Mich. 2001) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The Arbitrator correctly followed Michigan law by requiring that Martis prove that unlawful discriminatory or retaliatory animus actually motivated DISH's actions.  The Arbitrator found no such evidence nor even any "smoke" that would suggest the possibility

13

that his termination was related to his disability. (Arb. Op. 15.) The Arbitrator found that although the reasons given for Martis's termination were not valid, the individuals who testified about that termination were credible. (*Id.*) The Arbitrator found that although the discharge in this case was wrong, there was no causal connection between Martis's disability and his discharge. (*Id.* at 16.)

> In fact, the adamancy with which the five company witnesses testified in support of applying the two policies at issue to Claimant serves to demonstrate not only their blindness to any other basis for the discharge, such as disability, but cements the Respondent's position that they were so overwhelmed with their own enthusiasm for their policies that they didn't consider anything else.

(Arb. Op. 16.) The Arbitrator determined that Martis failed to present sufficient evidence that DISH retaliated or discriminated against him because of his disability. (Ex. F, pp. 16-17.) Whether or not Martis or even this Court disagrees with this conclusion, the Court cannot say that the Arbitrator exceeded the scope of his authority or that he manifestly disregarded the law. Accordingly, the Court will grant DISH's motion for summary judgment, confirm the arbitration award, and deny Martis's cross-motion to vacate the arbitration award.

## V.

The Court also has before it Defendant DISH's motion for sanctions and for an award of attorney's fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the terms of the parties' Arbitration Agreement. Defendant DISH contends that Martis and his counsel should be sanctioned for filing pleadings in furtherance

14

of a frivolous complaint, for needlessly and vexatiously multiplying these proceedings, and for filing exhibits with his complaint that the parties had expressly agreed to keep confidential.

Rule 11 "affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002) (citing Fed. R. Civ. P. 11(b)(1) through (3)). The court is also authorized, under 28 U.S.C. § 1927, to assess sanctions against any attorney who multiplies the proceedings in any case "unreasonably and vexatiously." 28 U.S.C. § 1927.

Although Martis's claims were non-meritorious, the Court is not convinced that they were presented for an improper purpose or that they were frivolous. Moreover, to the extent DISH complains that Martis knowingly and improperly filed exhibits with his complaint that were subject to confidentiality under the Arbitration Agreement,[5] this Court has already rejected the argument. As the Magistrate Judge noted: "Once the parties resort to the courts, however, their confidentiality agreement does not, and cannot, authorize the sealing of a presumptively public federal court record. The parties are privileged to arbitrate in secret, but

---

[5]The Arbitration Agreement provides in relevant part that "all arbitration proceedings, including but not limited to hearings, discovery, settlements, and awards shall be confidential . . . ." (Arb. Agrmt. ¶ 2.)

15

they must litigate in public." (Mem. Op. 4, ECF No. 7.)  The Arbitration Agreement is expressly subject to the FAA, and the FAA allows actions to vacate the arbitration award. In such actions the record of the arbitration proceedings will presumptively be a matter of public record.  The parties' agreement to keep arbitration proceedings confidential does not trump the FAA's provisions authorizing actions to vacate or confirm the arbitration award. The Court accordingly finds no basis for imposing sanctions under Rule 11 or § 1927.

Defendant DISH contends that it may also be entitled to an award of attorneys' fees and costs pursuant to the terms of the parties' Arbitration Agreement.  The Arbitration Agreement provides in pertinent part:

> In the event either party hereto files a judicial or administrative action asserting claims subject to this Agreement, and the other party successfully stays such action and/or compels arbitration of the claims made in such an action, the party filing the administrative or judicial action shall pay the other party's reasonable attorney's fees and costs incurred in obtaining a stay and/or compelling arbitration.

(Arb. Agrmt. ¶ 3.)

Martis has not asserted claims in this action that are subject to the Arbitration Agreement.  His action is directed at vacating the arbitration award.  Contrary to DISH's assertions, the Arbitration Agreement does not provide for recovery of attorneys' fees for unsuccessfully seeking to have an arbitration award vacated.  Accordingly, the Court concludes that the Arbitration Agreement does not provide a contractual basis for an award of fees and costs in this case.

16

For the reasons stated, DISH's motion for summary judgment will be granted, the arbitration award will be confirmed, Martis's motion to vacate will be denied, and DISH's motion for sanctions will be denied.

An order consistent with this opinion will be entered.

Dated: <u>June 9, 2014</u>                                <u>/s/ Robert Holmes Bell</u>
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE